IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLIANTGROUP, L.P. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-cv-03114 |
| | § | |
| BRAD MOLS | § | |

### PLAINTIFF'S SECOND AMENDED COMPLAINT, APPLICATION FOR TEMPORARY INJUNCTION AND REQUEST FOR PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff ALLIANTGROUP, L.P., ("ALLIANTGROUP") and files its Second Amended Complaint[1], Application for Temporary Injunction, and Request for Permanent Injunction against Defendant BRAD MOLS ("MOLS" herein) and shows:

#### PARTIES

1. ALLIANTGROUP is a domestic Limited Partnership which has its principle place of business in the State of Texas.

2. Defendant BRAD MOLS is an individual who resides in California but has conducted business in the State of Texas and has entered an appearance in this matter and may be served via his attorneys of record Randall Sorrels and Brian S. Humphrey, Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, 800 Commerce Street, Houston, Texas 77002.

#### VENUE AND JURISDICTION

3. Venue in this district under 28 U.S.C. 1391(a)(2) and 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

---

[1] This is Plaintiff's first amendment since this matter was removed to Federal Court by Defendant MOLS and since Defendant MOLS filed his FRCP 12(b)(2) and 12(b)6) motions, and is filed within 21 days of such. FRCP 15(a).

4.  Additionally, venue in Harris County, Texas is proper pursuant to the "Employment Agreement" dated September 18, 2007 ("Contract") entered into by and between ALLIANTGROUP and MOLS, which contains a forum selection clause designating that the exclusive venue for any lawsuit relating to or arising under the Employment Agreement shall be Harris County, Texas.

5.  This Court has personal jurisdiction over MOLS (a California resident) as he conducted business in Texas, entered into a contract with ALLIANTGROUP (a Texas resident) and the parties are to perform the Contract, at least in part, in the State of Texas. Regarding MOLS' substantial contacts with Texas and his conducting business in Texas such include, but are not limited to:

   a.  MOLS marketed ALLIANTGROUP's tax consulting services to Texas companies;

   b.  MOLS negotiated and signed ALLIANTGROUP engagement contracts with Texas clients (these client contracts which MOLS negotiated and signed even contain Texas venue and choice of law provisions);

   c.  MOLS provided tax consulting services to Texas companies in relation to Texas companies claiming Texas tax credits and/or Federal tax credits;

   d.  MOLS received substantial commissions relating to Texas clients;

   e.  MOLS met with and marketed tax consulting services to clients (from around the United States) and/or their CPA's in ALLIANTGROUP's Houston, Texas office;

   f.  MOLS received substantial commissions relating to out of state clients which MOLS met with at ALLIANTGROUP's Houston, Texas office (these client contracts even contain Texas venue and choice of law provisions);

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 2

g. MOLS contacted clients and/or their CPAs and provided tax consulting services while MOLS was physically in ALLIANTGROUP's Houston, Texas office;

h. MOLS continuously used ALLIANTGROUP's staff in Houston, Texas to support his activities in Texas and throughout the United States;

i. MOLS directed client contracts and communications regarding his providing tax consulting services to ALLIANTGROUP's Houston, Texas office;

j. MOLS attended numerous management meetings in Houston, Texas over his nearly 11 years with ALLIANTGROUP;

k. MOLS and his wife attended numerous holiday parties and corporate functions in Houston, Texas over his nearly 11 years with ALLIANTGROUP;

l. MOLS directed all of his expenses reports to ALLIANTGROUP's Houston, Texas office;

m. MOLS received and cashed ALLIANTGROUP paychecks, commission checks, bonus checks and expense reimbursement checks drawn on a Texas bank;

n. MOLS (and his wife) executed an Options Cancellation Agreement with ALLIANTGROUP which contained a Texas choice of law provision wherein MOLS received substantial compensation; and

o. Since resigning from ALLIANTGROUP, MOLS has engaged the services of at least one Texas resident, DANIEL LEWICKI, to provide tax consulting services to MOLS' clients.

6. Furthermore, MOLS has consented to jurisdiction via the Contract as it provides that jurisdiction shall be solely in the State of Texas. Additionally, MOLS removed this matter to the Southern District of Texas, from the 295TH District Court of Harris County, Texas.

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 3

## FACTS

7.  ALLIANTGROUP and MOLS entered into the Contract dated September 18, 2007. *See* attached **Exhibit A**, incorporated by reference as if fully set forth herein (confidential compensation information redacted). ALLIANTGROUP is a national tax consulting firm with its primary office in Houston, Texas, with clients in virtually every state of the United States. ALLIANTGROUP also has offices in states such as New York, New York; Chicago, Illinois; and Irvine, California.

8.  MOLS is a 1991 graduate of San Diego State University (Bachelors in English) and 1993 graduate of Western State College (Business, Accounting & Finance), and a certified public accountant. MOLS is 49 years old.

9.  Pursuant to the terms and conditions of the Contract, MOLS was to market and provide tax consulting services on behalf of ALLIANTGROUP to its clients as a Regional Managing Director. MOLS was responsible for developing new business, maintaining relationships with the existing client base, developing marketing strategies, general sales proposals and performing other business/client relation responsibilities for ALLIANTGROUP throughout the United States. During his more than 11 years[2] with ALLIANTGROUP, MOLS negotiated and executed client contracts with hundreds of clients located in at least 20 states (Arizona, California, Colorado, Georgia, Hawaii, Idaho, Kansas, Louisiana, Minnesota, Nevada, New Mexico, New York, Ohio, Oklahoma, North Dakota, Pennsylvania, Phoenix, South Dakota, Texas, and Utah).

10. As an executive with ALLIANTGROUP, MOLS also attended executive meetings, met with former commissioners of the IRS, met with current and former federal and state legislators and senators, and was provided with extremely high level confidential and proprietary information,

---

[2]  MOLS was hired by ALLIANTGROUP on or about May 23, 2005.

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 4

and trade secrets even to the exclusion of most others employed by ALLIANTGROUP. Using this information, MOLS became a multi-millionaire.

### A. MOLS WAS GIVEN ACCESS TO ALLIANTGROUP'S CONFIDENTIAL INFORMATION, INCLUDING CLIENT AND CPA CONTACT INFORMATION.

11. Pursuant to Article VII Section A of the Contract, ALLIANTGROUP entrusted MOLS with access to, and use of, its confidential, proprietary and trade secret information to perform his duties (the "Confidential Information"). Such Confidential Information included, but was not limited to, ALLIANTGROUP's client lists and CPA contacts as well as other lists and/or records of leads or prospects.

12. ALLIANTGROUP's Confidential Information derives its high value from the fact that it is not known by its competitors. For example, a competitor seeking to expand its client base would derive a competitive benefit from knowledge of 1) the identity of a client representative and/or its CPA with decision-making ability; 2) the pricing structure that ALLIANTGROUP offers/offered to that client; 3) the specific and historic business needs of that client and 4) the identity of the client's or prospective client's CPA. ALLIANTGROUP took reasonable measures to maintain the confidentiality of its Confidential Information and to prevent competitors from securing such. Among other things, ALLIANTGROUP entered into the Contract containing measures to protect against the disclosure of the Confidential Information.

### B. MOLS AGREED TO MAINTAIN THE CONFIDENTIALITY OF ALLIANTGROUP'S CONFIDENTIAL INFORMATION AND NOT TO SOLICIT ALLIANTGROUP'S CLIENTS AND CPA CONTACTS POST EMPLOYMENT.

13. In entering the Contract, MOLS agreed to a number of obligations designed to protect ALLIANTGROUP'S Confidential Information and protect ALLIANTGROUP's legitimate business interests. MOLS agreed to Article VII Section C of the Contract which stated as follows:

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 5

### C. Duty to Not Disclose Confidential Intellectual Property.

1. MOLS will not at any time (whether during or after MOLS' employment with ALLIANTGROUP): (a) retain or use for the benefit, purposes or account of MOLS or any other Person; or (b) disclose, divulge, reveal, communicate, share, transfer or provide access to any Person outside ALLIANTGROUP (other than its professional advisers who are bound by confidentiality obligations), any non-public, proprietary or confidential information – including without limitation trade secrets, know-how, research and development, software, databases, inventions, processes, formulae, technology, designs and other intellectual property, information concerning finances, investments, profits, pricing, costs, products, services, vendors, customers, clients, partners, investors, personnel, compensation, recruiting, training, advertising, sales, marketing, promotions, government and regulatory activities and approvals – concerning the past, current or future business, activities and operations of ALLIANTGROUP, its subsidiaries or affiliates and/or any third party that has disclosed or provided any of same to ALLIANTGROUP on a confidential basis ("Confidential Information") without the prior written authorization of the senior management of ALLIANTGROUP.

*See* **Exhibit A**.

14. MOLS further agreed to Article VII Section B of the Contract as follows:

    ### B. Unfair Competition Prohibited

    1. MOLS acknowledges and recognizes the highly competitive nature of the business of ALLIANTGROUP and its affiliates (the "Business") and that MOLS will receive substantial Confidential Information and Trade Secrets relating to ALLIANTGROUP, its products, employees, customers, and methods of doing business during his employment with ALLIANTGROUP. According MOLS agrees, in consideration for and in connection with the provision to him of Confidential Information and Trade Secrets, as follows:

       (c) **Non-Solicitation of Contractors:** During the Restricted Period, MOLS will not, directly or indirectly, solicit or encourage any consultant then under contract with ALLIANTGROUP or its affiliates or any referring CPAs to cease working with or referring business to ALLIANTGROUP or its affiliates.

       (d) **Non-Solicitation of Customers/Clients.** MOLS agrees that during the Employment Terms and thereafter he shall not, without the prior written consent of ALLIANTGROUP, directly or indirectly, as a sole

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 6

proprietor, member of a partnership, stockholder or investor, officer or director of a corporation, or as an employee, associate, consultant, independent contractor or agent of any person, partnership, corporation or other business organization or entity other than ALLIANTGROUP use proprietary information, including but not limited to customer lists, to solicit or endeavor to entice away from ALLIANTGROUP any of ALLIANTGROUP's customers or suppliers to do business with any business entity in competition with ALLIANTGROUP.

See **Exhibit A**.

### C. MOLS RESIGNED FROM ALLIANTGROUP AND IMMEDIATELY SOLICITED ITS CLIENTS AND/OR CPAS.

15. On or about May 2, 2016, MOLS resigned from ALLIANTGROUP and immediately, in violation of the Contract, began directly competing with ALLIANTGROUP by soliciting clients and/or CPA contacts he had come to know while employed by ALLIANTGROUP. Using ALLIANTGROUP's confidential and proprietary information, and trade secrets, MOLS proceeded to contact and solicit those clients and/or CPAs for his own gain.

16. MOLS also partnered with, employed and/or contracted with other former employees of ALLIANTGROUP to compete with ALLIANTGROUP by soliciting its clients and/or CPAs. From on or about May 2, 2016 to August 10, 2016, MOLS had possession of and/or access to an ALLIANTGROUP laptop computer which had been issued to another former ALLIANTROUP employee – Jane Doe.

17. During this time, MOLS unlawfully accessed (or instructed others to access such on his behalf) this ALLIANTGROUP laptop computer which contained confidential and proprietary information, and trade secrets. ALLIANTGROUP's confidential and proprietary information, and trade secrets were unlawfully copied from this laptop computer. ALLIANTGROUP did not consent to the misappropriation and/or conversion of its property.

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 7

18. MOLS used ALLIANTGROUP's confidential and proprietary information, and trade secrets, and solicited at least the following ALLIANTGROUP CPA contacts on the behalf of his new business:

   a.  Rick C. Heldwien
       Soares, Sandall, Bernacchi & Petrovich, LLP (Oxnard, CA)

   b.  Jeff Bickel
       Tanner LLC (Salt Lake City, Utah)

   c.  Dan Brklacich
       Bangerter, Lund & Associates (Bountiful, Utah)

19. ALLIANTGROUP did not approve or consent to these solicitations by MOLS.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

20. All previous paragraphs are incorporated herein by reference.

**Confidentiality Clause**

21. The Contract contains valid and enforceable covenants governing MOLS' post-employment conduct. For example, MOLS agreed to certain obligations related to ALLIANTGROUP's Confidential Information in Article VII Section C of the Employment Agreement:

   **C. Duty to Not Disclose or Use Confidential Intellectual Property.**

   1. MOLS will not at any time (whether during or after MOLS' employment with ALLIANTGROUP): (a) retain or use for the benefit, purposes or account of MOLS or any other Person; or (b) disclose, divulge, reveal, communicate, share, transfer or provide access to any Person outside ALLIANTGROUP (other than its professional advisers who are bound by confidentiality obligations), any non-public, proprietary or confidential information – including without limitation trade secrets, know-how, research and development, software, databases, inventions, processes, formulae, technology, designs and other intellectual property, information concerning finances,

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 8

investments, profits, pricing, costs, products, services, vendors, customers, clients, partners, investors, personnel, compensation, recruiting, training, advertising, sales, marketing, promotions, government and regulatory activities and approvals – concerning the past, current or future business, activities and operations of ALLIANTGROUP, its subsidiaries or affiliates and/or any third party that has disclosed or provided any of same to ALLIANTGROUP on a confidential basis ("Confidential Information") without the prior written authorization of the senior management of ALLIANTGROUP.

*See* **Exhibit A.**

**Non-solicitation Provision**

22.   MOLS further agreed, in Article VII Section B, not to compete with ALLIANTGROUP by soliciting its contractors, customers and/or clients after the termination of MOLS' employment as follows:

> **B. Unfair Competition Prohibited**
>
> 1. MOLS acknowledges and recognizes the highly competitive nature of the business of ALLIANTGROUP and its affiliates (the "Business") and that MOLS will receive substantial Confidential Information and Trade Secrets relating to ALLIANTGROUP, its products, employees, customers, and methods of doing business during his employment with ALLIANTGROUP. According MOLS agrees, in consideration for and in connection with the provision to him of Confidential Information and Trade Secrets, as follows:
>
> (c) **Non-Solicitation of Contractors:** During the Restricted Period, MOLS will not, directly or indirectly, solicit or encourage any consultant then under contract with ALLIANTGROUP or its affiliates or any referring CPAs to cease working with or referring business to ALLIANTGROUP or its affiliates.
>
> (d) **Non-Solicitation of Customers/Clients.** MOLS agrees that during the Employment Terms and thereafter he shall not, without the prior written consent of ALLIANTGROUP, directly or indirectly, as a sole proprietor, member of a partnership, stockholder or investor, officer or director of a corporation, or as an employee, associate, consultant, independent contractor or agent of any person, partnership, corporation or other business organization or entity other than ALLIANTGROUP use proprietary information, including but not limited to customer lists, to solicit or endeavor to entice away from ALLIANTGROUP any of

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 9

ALLIANTGROUP's customers or suppliers to do business with any business entity in competition with ALLIANTGROUP.

*See* **Exhibit A.**

23. Despite giving his word otherwise, MOLS violated the terms of the Employment Agreement by (i) taking steps to compete with ALLIANTGROUP and either formed his own company and/or began working with a competitor of ALLIANTGROUP; (ii) using ALLIANTGROUP's Confidential Information; and (iii) soliciting ALLIANTGROUP's current and/or prospective customers, clients and/or CPA contacts. Furthermore, MOLS used Confidential Information such as knowledge of the identity of ALLIANTGROUP current and/or prospective customers, clients and/or CPA contacts, the contact information of those customers, clients and/or CPA contacts, ALLIANTGROUP's business strategy for those current and/or prospective customers, clients and/or CPA contacts and their specific history and business needs in an attempt to take ALLIANTGROUP's customers and clients. ALLIANTGROUP fully complied with its obligations under the Employment Agreement.

24. ALLIANTGROUP has suffered, and continues to suffer, damages that were a natural, probable and foreseeable result of MOLS' breaches of the Employment Agreement.

### SECOND CAUSE OF ACTION: MISAPPROPRIATION AND WRONGFUL USE OF TRADE SECRETS

25. All previous paragraphs are incorporated herein by reference.

26. MOLS wrongfully used/is using ALLIANTGROUP's Confidential Information, and did/does so without ALLIANTGROUP'S consent. Specifically, MOLS used information including the knowledge of the identity of ALLIANTGROUP's clients and/or CPA contacts, the contact information of those current and/or prospective clients and/or CPA contacts, ALLIANTGROUP's business strategy for those current and/or prospective clients and/or CPA

contacts, and the current and/or prospective client's and/or CPA contact's specific and historic business needs. Therefore, MOLS has misappropriated ALLIANTGROUP's trade secrets pursuant to Tex. Civ. Prac. & Rem. Code § 134A.001.

27. MOLS was provided access to Confidential Information – including, among other things, business information, customer, client and/or CPA contact information, customer, client and/or CPA contacts lists and arrangements with customers, clients and/or CPA contacts – during his employment and only for his limited use as ALLIANTGROUP's Regional Managing Director. Tex. Civ. Prac. & Rem. Code § 134A.002(6). The Confidential Information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the information's disclosure or use. *Id.*

28. Under the terms of the Employment Agreement, MOLS had, and has, a duty to maintain the Confidential Information's secrecy and a duty to limit its use. Also, ALLIANTGROUP made reasonable efforts to maintain the secrecy of the Confidential Information.

29. MOLS' has also misappropriated and/or unlawful converted ALLIANTGROUP's confidential and proprietary information, and trade secrets via the wrongful possession and/or access to an ALLIANTGROUP laptop computer. MOLS has breached the terms of the Contract by failing to return all ALLIANTGROUP confidential information and trade secrets in his possession at the time of his resignation.

30. MOLS' misappropriation of ALLIANTGROUP's Confidential Information was willful, knowing, and deliberate, creating a direct benefit for MOLS and/or his new employer, a direct competitor of ALLIANTGROUP.

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 11

31. As a result of MOLS' misappropriation and MOLS' wrongful use, ALLIANTGROUP has suffered actual damages including economic damages, and the loss of business goodwill.

### THIRD CAUSE OF ACTION:
### BREACH OF CONFIDENTIAL RELATIONSHIP

32. As a result of ALLIANTGROUP's entrustment of its Confidential Information to MOLS and the creation of a confidential relationship, MOLS owes a *continuing* duty of confidentiality to ALLIANTGROUP. This is an informal fiduciary duty that requires MOLS to maintain the confidentiality of the information he received or learned while employed by ALLIANTGROUP and to refrain from using or disclosing it for his own benefit or in any manner adverse to ALLIANTGROUP. MOLS has breached this duty through the wrongful conduct described above, including but not limited to his theft and unauthorized disclosure of ALLIANTGROUP's trade secrets and Confidential Information. That wrongful conduct has caused damages and irreparable harm to ALLIANTGROUP and will continue to result in further such damages and harm. ALLIANTGROUP seeks the recovery of its damages, an award of exemplary damages, and all appropriate equitable relief, including an injunction to prevent further harm.

### FOURTH CAUSE OF ACTION:
### TORTUOUS INTERFERENCE

33. All previous paragraphs are incorporated herein by reference.

34. Pleading in the alternative, and without waiving the preceding, ALLIANTGROUP would show that MOLS tortuously interfered with ALLIANTGROUP's on-going and/or prospective contracts/relationships with its clients and/or CPA contacts. MOLS' actions are not privileged or justified. MOLS' willful and malicious interference is a proximate cause of the damages complained of by ALLIANTGROUP herein.

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 12

### FIFTH CAUSE OF ACTION:
### VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT

35. Pleading in the alternative, and without waiving the preceding, pursuant to the Federal Computer Fraud and Abuse Act (hereinafter "CFAA"), ALLIANTGROUP would show that MOLS knowingly accessed at least one ALLIANTGROUP computer without authorization or exceeding the authorized access, and by means of such conduct furthered the intended fraud Defendant was committing against ALLIANTGROUP as well as other tortuous activities as described throughout herein. *See* 18 U.S.C. 1030(g). By and through the unauthorized access and/or in excess of MOLS' authorization, MOLS obtained trade secrets and confidential information, including but not limited to, information regarding current and prospective clients, current client lists, prospective client lists, billing information, CPA alliance information and/or marketing materials. As a result of MOLS' acts ALLIANTGROUP has suffered damages well in excess of the statutory minimum requirements for stating a claim under the Act.

### APPLICATION FOR TEMPORARY INJUNCTION

36. All previous paragraphs are incorporated herein by reference.

37. Injunctive relief is also requested to eliminate the commercial advantage that MOLS would otherwise derive from his misappropriation of ALLIANTGROUP's Confidential Information. *See* TEX. CIV. PRAC. & REM. CODE § 134A.003.

38. As a result of MOLS' breach of the Employment Agreement and misappropriation of trade secrets, ALLIANTGROUP has a probable right to the relief sought. MOLS solicited or has attempted to solicit ALLIANTGROUP current and/or prospective customers, clients and/or CPA contacts. ALLIANTGROUP will suffer probable, imminent injury as a result of MOLS' conduct. MOLS now directly competes with ALLIANTGROUP and MOLS solicited or has attempted to solicit ALLIANTGROUP's current and/or prospective customers, clients and/or CPA contacts

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 13

using ALLIANTGROUP's Confidential Information, including the knowledge of the identity of ALLIANTGROUP's customers, clients and/or CPA contacts, the contact information for those current and/or prospective customers, clients and/or CPA contacts, ALLIANTGROUP's business strategy for those customers, clients and/or CPA contacts, and the current and/or prospective customer's, client's and/or CPA contact's specific needs.

39. The harm that ALLIANTGROUP will suffer is irreparable. Given the highly competitive industry in which ALLIANTGROUP does business and the highly confidential nature of the Confidential Information, MOLS' continued use of such Confidential Information to solicit ALLIANTGROUP's current and/or prospective customers, clients and/or CPA contacts will cause ALLIANTGROUP irreparable harm.

40. ALLIANTGROUP has no adequate remedy at law for its claims because the damages resulting from MOLS' conduct are not quantifiable. Indeed, the business ALLIANTGROUP obtains or loses to a competitor can fluctuate over time, and the impact caused by Defendants soliciting current and/or prospective customers, clients and/or CPA contacts will be impossible to quantify, and the costs and time associated with attempting to re-acquire customers are impossible to calculate. Finally, the resulting economic damage ALLIANTGROUP suffered by losing business to a direct competitor is likewise impossible to quantify.

### REQUEST FOR PERMANENT INJUNCTION

41. All previous paragraphs are incorporated herein by reference.

42. ALLIANTGROUP asks the Court to set its Application for a Permanent Injunction for a full trial on the merits and, after the trial, issue a permanent injunction against MOLS whereby he is enjoined from: 1) soliciting ALLIANTGROUP's clients and/or CPA contacts; 2) disseminating

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 14

Confidential Information obtained by and through ALLIANTGROUP; and 3) competing with ALLIANTGROUP in violation of his Contract with ALLIANTGROUP.

### DAMAGES

43. ALLIANTGROUP is entitled to recover damages for breach of the Employment Agreement and misappropriation of ALLIANTGROUP's Confidential Information including both the actual loss caused by Defendant's misappropriation and wrongful use of Confidential Information and the damages associated with ALLIANTGROUP's other causes of action. Plaintiff seeks monetary relief over $1,000,000.

### EXEMPLARY DAMAGES

44. MOLS has willfully and maliciously converted and misappropriated ALLIANTGROUP's confidential and proprietary information, and trade secrets. Accordingly, pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.004 *et seq.*, ALLIANTGROUP is entitled to recoup exemplary damages from MOLS.

### ATTORNEY'S FEES

45. As a result of MOLS' conduct described above, ALLIANTGROUP was forced to retain the services of undersigned counsel and agreed to pay them a reasonable fee for such services.

46. Accordingly, pursuant to Texas Civil Practice and Remedies Code § 38.001, ALLIANTGROUP is entitled to recoup its reasonable and necessary attorney's fees from MOLS because ALLIANTGROUP seeks to recover for claims related to MOLS' breach of the Employment Agreement.

47. ALLIANTGROUP is also entitled to attorney's fees based on Article IX Section F of the Employment Agreement which states as follows:

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 15

**F. Attorney's Fees:** ALLIANTGROUP shall be entitled to recover its reasonable attorney's fees and costs incurred in enforcement of any provision of this Agreement in the event of MOLS is in breach.

*See* **Exhibit A.**

## PRAYER

WHEREFORE, PREMISES CONSIDERED, ALLIANTGROUP asks that it be granted judgment against MOLS for the following:

a. Actual and consequential damages suffered by ALLIANTGROUP as a result of MOLS's breach of the Employment Agreement;

b. Actual damages suffered by ALLIANTGROUP as a result of MOLS' misappropriation of trade secrets and/or tortuous interference with existing and/or prospective business relationships/contracts;

c. Nominal damages;

d. Injunctive relief as set forth above;

e. Exemplary damages;

f. All lawful pre-judgment and post-judgment interest on the foregoing amounts at the highest rate allowed by law;

g. All reasonable attorney's fees and post-judgment interest on such attorney's fees at the highest rate allowed by law;

h. All costs of court incurred in connection with this lawsuit; and

i. All additional and further relief, general and special at law or in equity, to which ALLIANTGROUP may show itself to be justly entitled.

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 16

Respectfully submitted,

/s/ John T. Simpson

John T. Simpson, Jr.
Texas State Bar No. 00794639
Federal Bar No. 19690
John.Simpson@alliantgroup.com
3009 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 212-1452
Facsimile: (713) 350-3626
**ATTORNEY IN CHARGE FOR PLAINTIFF ALLIANTGROUP, L.P.**

**OF COUNSEL:**
Matthew J. Marzullo
Texas State Bar No. 24078935
Federal Bar No. 1487536
Matt.Marzullo@alliantgroup.com
3009 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 212-1452
Facsimile: (713) 350-3626
**ATTORNEY FOR PLAINTIFF ALLIANTGROUP, L.P.**

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 17

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing instrument was delivered to all parties below on this the 14th day of November 2016:

***Attorneys for Defendant Brad Mols***
Mr. Randy O. Sorrels
TBN: 18855350
Mr. Brian S. Humphrey, II
TBN: 24074456
ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & FRIEND
800 Commerce Street
Houston, TX 77002
Tel: 713-222-7211
Fax: 713-225-0827
Email: rsorrels@abrahamwatkins.com
Email: bhumphrey@abrahamwatkins.com


            */s/ John T. Simpson*
            _____
            John T. Simpson

*Plaintiff's Second Amended Complaint, Application for*
*Temporary Injunction and Request for Permanent Injunction*
Page 18