IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| ALLIANT GROUP, LP | 4:16-cv-03114 |
| VS. | June 21, 2017<br>Houston, Texas |
| MOLS | 4:03:42 p.m. |

HEARING

BEFORE THE HONORABLE NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For Plaintiff | Matthew Lee Simmons<br>Littler Mendelson<br>1301 McKinney Street<br>Suite 1900<br>Houston, Texas 77010 |
| | John Thomas Simpson, Jr.<br>Alliantgroup, LP<br>3009 Post Oak Boulevard<br>Suite 2000<br>Houston, Texas 77056 |
| For Defendant Brad Mols,<br>Movant Cindy Berkson Mols | Brian Scott Humphrey, II<br>Abraham, Watkins, Nichols,<br>   Sorrels, Agosto & Aziz<br>800 Congress Street<br>Houston, Texas 77002 |
| For Third Party Witnesses<br>(Telephonically) | Rob Hennig<br>Duyen Nguyen<br>Hennig Ruiz, PC<br>1925 Century Park East<br>Suite 1960<br>Los Angeles, California 90067 |

Proceedings from official electronic sound recording;
transcript produced by court approved transcriber.

Digital Scroll Transcription          281.382.9862

APPEARANCES (Cont.):

Court Clerk                      Shannon Jones

Electronic Recording Operator    Linhthu Do
                                 U. S. District Clerk's
                                    Office
                                 515 Rusk
                                 Houston, Texas 77002

1          THE COURT:  All right.  Good afternoon,

2    everyone.  Please be seated.  Sorry I couldn't see you

3    earlier.  I'm on criminal duty, and I'm swamped.

4               So, apparently, there's a dispute over

5    Mr. Jadav's deposition tomorrow, correct?

6          MR. SIMMONS:  Yes, Your Honor.

7          MR. HUMPHREY:  There is, Your Honor.

8          THE COURT:  And that's because Mr. Humphrey

9    violated the Protective Order?

10              Let's talk about the Protective Order for

11   just a minute.  Why wasn't it filed?  Right?  I mean,

12   Judge Lake has never signed it.

13         MR. HUMPHREY:  I -- when they asked me to sign

14   it, Your Honor; I sent it back to them, and they said

15   they'd file it and they never did.

16         MR. SIMMONS:  That -- that's my understanding,

17   that -- I don't know whether we've said we would file it

18   or not, but my understanding is that the parties were

19   operating under it according to the e-mails between

20   Mr. Humphrey and -- and the counsel at the time.  My

21   firm was not involved at the time that it was being

22   discussed, but that was my understanding is that they

23   had an agreement and --

24         THE COURT:  All right.  Well, it sounds like

25   you --

1        MR. SIMMONS:  -- even though it hadn't been

2   filed.

3        THE COURT:  -- an agreement and you never

4   submitted it to the judge to sign.  So, I'm going to sign

5   it just so there's no question there is a Protective

6   Order.  Today is the 21st.

7        COURT CLERK:  Judge, which Protective Order --

8   which docket number is that on?

9        THE COURT:  It's -- I'm signing it right now.

10  It's 50-2.

11       COURT CLERK:  Okay.

12       THE COURT:  And you can file that as its own

13  free-standing --

14       COURT CLERK:  Okay.

15       THE COURT:  -- matter.

16            As I understand it, then, Mr. Simpson,

17  you're concerned that Mr. Humphrey violated the

18  Protective Order by filing something, what was it,

19  someone's -- two pages from someone's deposition?

20       MR. HUMPHREY:  That's correct, Your Honor.  It

21  was two pages from Lynn Hedlund's deposition.  They had

22  designated the entire deposition at the very beginning

23  as confidential, and I had just forgotten that fact,

24  which was my mistake.

25       THE COURT:  And is it sealed up now?

1          MR. HUMPHREY:  I have filed a Motion to Seal

2   it, Your Honor.

3          THE COURT:  All right.  Shannon, can we pull

4   that up and seal up?  Any --

5          COURT CLERK:  There is no ob- --

6          THE COURT:  -- objection?  I mean, you know --

7          MR. SIMMONS:  No, no objection to that, Your

8   Honor.

9          THE COURT:  So --

10         MR. SIMMONS:  And I -- I --

11         COURT CLERK:  I can --

12         MR. SIMMONS:  -- I demanded that he did that.

13         MR. HUMPHREY:  It is -- the Motion to Seal is

14   Docket 43.  The Protective Order -- I think I have it

15   right here.  It was Exhibit 3 to my motion for

16   protection, Your Honor, and Docket 38 is the motion for

17   protection.

18         COURT CLERK:  So 38, Exhibit 3?

19         MR. HUMPHREY:  That's correct.

20         COURT CLERK:  Okay.

21         MR. SIMMONS:  Is it the Protective Order?

22         MR. HUMPHREY:  It was my motion for --

23         THE COURT:  Motion --

24         MR. HUMPHREY:  -- protection.

25         THE COURT:  -- for protection.

1            MR. HUMPHREY:  That the exhibit was attached
2   to my motion for protection.
3            MR. SIMMONS:  Oh, okay, yeah.  Yeah.
4            THE COURT:  All right.  So, let's seal -- can
5   we just seal Exhibit 3?
6            COURT CLERK:  I'm going to try to do that just
7   by itself.
8       (Pause in proceedings.)
9            COURT CLERK:  Okay.  It's done.
10           THE COURT:  All right.  That looks like that
11  worked.
12               Now, and there's the issue that you think
13  Mr. Mols' wife has had access to confidential
14  information?
15           MR. SIMMONS:  She was attached.  It -- it was
16  her motion that that designated confidential information
17  was part of, and so that's the basis of that.
18               So, I don't know whether she had access to
19  the entire deposition.  She was a party filing the
20  motion, and part of that filing of the motion was an
21  exhibit that had documents that were designated as
22  confidential.
23           THE COURT:  All right.
24           MR. SIMMONS:  That's the --
25           THE COURT:  Did Ms. Mols see any part of that

1  deposition?

2          MR. HUMPHREY:  No, Your Honor.  My client

3  hasn't seen it other than the fact that he was present

4  at the deposition.

5          THE COURT:  Okay.  All right.  So that sounds

6  fine.

7              So then we get down to the deposition.

8  It's my opinion you need to -- you need to go forward

9  with Mr. Jadav's deposition.

10             Now, if you keep violating the Protective

11  Order, you know, stuff will happen.

12         MR. HUMPHREY:  That's my --

13         THE COURT:  But --

14         MR. HUMPHREY:  -- understanding, Your Honor,

15  completely.

16         THE COURT:  -- you know, discovery ends at the

17  end of the -- end of next week.

18         MR. SIMMONS:  Actually, Your Honor, I believe

19  that -- that in our last hearing, we had extended the

20  discovery --

21         THE COURT:  We --

22         MR. SIMMONS:  -- period.

23         THE COURT:  Was I lenient?  I thought I

24  remembered that, but then I thought everything's been so

25  crazy with criminal, I can't remember anything.

1          MR. SIMMONS:  I absolutely understand.

2                    And one of the things that -- that we

3    pointed out in our motion for protection, along with,

4    obviously, the confidentiality concerns and whether the

5    information asked of the CEO of our company will then be

6    leaked later is, A, the nec- -- the necessity of it.

7    We're -- we're fine with presenting.  We believe that

8    any information that he has provided we've already

9    answered -- or -- or that he'd be asked about we've

10   answered in interrogatories and we've answered with

11   three other senior executives of the company.

12                   So, this is a trade secrets case against

13   Mr. Mols.  I have never been involved in a case that

14   requires testimony after testimony, of more and more

15   senior executives, asking the same exact questions which

16   have already been answered.

17          THE COURT:  So what --

18          MR. SIMMONS:  But --

19          THE COURT:  What do you think you're going to

20   get out of Mr. Jadav that you haven't gotten out of

21   anyone else?

22          MR. HUMPHREY:  I want to know why they've sued

23   my client, Your Honor.  They have designated him as a

24   person with -- an individual with discoverable

25   information, have desig- -- sorry, designated him as a

1  person who has personal knowledge of the facts

2  underlying their case in their response to an

3  interrogatory.  When I deposed Wes Bangerter, who's the

4  one who verified their interrogatories, every time I

5  asked about an allegation they had, I asked him where he

6  heard that, he said, "I heard it from Mr. Jadav and

7  David Ji," "I heard it from Mr. Jadav," and somebody

8  else.  It was always something he heard from Mr. Jadav.

9  So, the only person who has personal knowledge of

10  everything that I can gather from my own discovery in

11  this case is Mr. Jadav.

12           So, certainly I need to ask them what they

13  know about the -- why they're suing my client.  Because

14  if I have the universe of information they had in order

15  to decide to sue my client, I think this may be a

16  Rule 11 sanctionable case.

17           THE COURT:  All right.  So how long have you

18  deposed these other witnesses?

19           MR. HUMPHREY:  Bangerter was maybe an hour,

20  and I don't think I've taken more than maybe an hour and

21  a half maximum with a witness.

22           So, I know one other issue in this

23  deposition is that they've brought up in an e-mail but

24  not the motion for protection are the sexual harassment

25  allegations against Mr. Jadav.  I would agree that if

1 this was just a case where the only allegations were

2 he -- that my client violated a non-solicit agreement,

3 then that may not be relevant. However, they've made my

4 client's reasons for leaving Alliantgroup very relevant.

5 They've alleged that he engaged in conspiracy with

6 Ms. -- Ms. Torres before they left Alliantgroup,

7 preparing to go and compete; and that certainly makes

8 his actual reason for leaving relevant.

9          They, in fact, asked Mr. -- I included

10 as an exhibit some of the other questions they asked

11 about Mr. Mols' and Ms. -- Ms. Torres's sexual history,

12 but they also asked --

13          THE COURT: What --

14          MR. HUMPHREY: -- a number of questions

15 about --

16          THE COURT: What are you pointing to?

17          MR. HUMPHREY: Oh, that was Exhibit 8 to my

18 Motion to Compel.

19          But, also, I have something that's not

20 attached as an exhibit but some more pages from a

21 deposition where they asked specifically --

22          THE COURT: Okay.

23          MR. HUMPHREY: -- why did you leave if you

24 were making so much money, and Mr. Mols talked about the

25 sexual harassment charge and they asked numerous

1   questions about that.

2           They certainly see his reasons for

3   leaving Alliantgroup to be relevant, and part of that

4   reason is the sexual harassment allegations by

5   Ms. Torres against Mr. Jadav.

6           Now, if they want to stipulate that

7   sexual harassment was one of his reasons for leaving,

8   then, I may not need to ask any of those questions; but

9   as long as they're going to question my client's reason

10   for leaving Alliantgroup, I think I have to check into

11   the veracity of that.

12           THE COURT: So, just bring me up to speed.

13   Ms. Torres was sexually harassed, allegedly, by

14   Mr. Jadav?

15           MR. HUMPHREY: Correct, Your Honor.

16           THE COURT: She leaves?

17           MR. HUMPHREY: Correct, Your Honor.

18           THE COURT: Voluntarily?

19           MR. HUMPHREY: Yes.

20           THE COURT: All right. She's not fired. And

21   then your client, Mr. Mols, also voluntarily leaves?

22           MR. HUMPHREY: Yes, Your Honor.

23           THE COURT: And he -- because he is offended

24   by her treatment?

25           MR. HUMPHREY: Yes, Your Honor. I mean, he

1  didn't like the culture there and what was going on

2  there.  That's -- the question was why did he leave when

3  he was making millions of dollars.  That's why.  He

4  didn't want to be a part of that.

5          THE COURT:  Okay.  So, you want to ask

6  Mr. Jadav whether or not he did sexually harass

7  Ms. Torres?

8          MR. HUMPHREY:  Yes, Your Honor.

9          MR. SIMMONS:  And -- and, sorry, Your Honor,

10  the only reason why that even came up in Mr. Mols'

11  deposition is because he used that as an excuse for why

12  he left.  None of those questions would have been asked

13  otherwise.

14          Now, what he's asking for is that if any

15  employee does something wrong, they can just say, "I did

16  it wrong because of the CEO's sexual behavior," and then

17  somehow because of that allegation, whether or not it's

18  true or not, they get to get and ask the CEO detailed

19  questions about his sexual life.  The -- the

20  consequences of -- of --

21          THE COURT:  No --

22          MR. SIMMONS:  -- allowing that --

23          THE COURT:  -- they get to ask if he's

24  sexually harassing Ms. Torres.  I'm assuming -- did they

25  have a sexual relationship?

1          MR. HUMPHREY:  That's what the allegation is,

2   or at least that there's a sexual -- an attempted sexual

3   relationship between the two.

4          MR. SIMMONS:  There --

5          THE COURT:  But there's -- but, I mean, it's

6   not his sex life, unless he's engaged in some sort of --

7          MR. SIMMONS:  And -- and that -- that's my

8   concern, okay, that where -- where the line is on asking

9   about the -- the veracity of these allegations, you get

10  into, "Well, have you ever done it before, even if you

11  didn't do it here?"

12         THE COURT:  No, you can ask --

13         MR. SIMMONS:  I want your --

14         THE COURT:  -- about Ms. Torres, and that's

15  it.  I mean --

16         MR. HUMPHREY:  Sure, Your Honor.  That's --

17         THE COURT:  And -- and his sex life is off

18  Limits, except to the extent it extends to Ms. Torres.

19         MR. HUMPHREY:  That's all I need to ask, Your

20  Honor.

21         MR. SIMMONS:  And then, also, specifically any

22  harassment of Ms. Torres.  I -- I think that --

23         THE COURT:  Yes.  Yes --

24         MR. SIMMONS:  Yeah --

25         THE COURT:  -- that's --

1        MR. SIMMONS:  -- absolute- -- absolutely.

2              And -- and that's actually one of the

3   things that -- that we wanted to clarify here today so

4   that my client and any -- anything else that went on

5   between him or anyone else or him and Ms. Torres is not

6   a subject of this deposition and then leaked to the

7   press -- because, you know, Counsel and Mr. Hennig have

8   already admitted that they've been talking to the press

9   about those allegations -- and whether his commenting on

10  those allegations would be confidential under the agreed

11  Protective Order.

12             Because -- I mean, do you think that

13  they're confidential?

14        MR. HUMPHREY:  Is what confidential?

15        MR. SIMMONS:  Whatever Mr. Jadav says about

16  the sexual harassment claims.

17        MR. HUMPHREY:  If he designates it as

18  confidential, I'll look at it, and if I don't agree with

19  it, I'll challenge it.

20        MR. SIMMONS:  So --

21        MR. HUMPHREY:  It depends on what's asked.

22        MR. SIMMONS:  So anything related to that can

23  and will be leaked to the press is what he's saying.

24        THE COURT:  All right.  So, this is what we'll

25  do.  Everything's confidential.  If you think it's not,

1  then you can come here and we will decide what is

2  confidential under the agreement and what's not.  No

3  leaks --

4          MR. HUMPHREY:  Of course, Your Honor.

5          THE COURT:  No leaks before the Court says

6  it's not part -- it's not confidential under your

7  agreement.  Okay?

8              Subject to that, he's got to be deposed.

9  It sounds like you can do it in less than two hours?

10          MR. HUMPHREY:  Probably, depending on the

11  responsiveness, but I don't like to take long

12  depositions, Your --

13          THE COURT:  Okay.

14          MR. HUMPHREY:  -- Honor.

15          THE COURT:  Then let's say limited to two

16  hours.  If you need to go over, call me up and tell me

17  why he's being nonresponsive.

18          MR. HUMPHREY:  Understood, Your Honor.

19          THE COURT:  And where is that deposition going

20  to be taken?  Here?

21          MR. HUMPHREY:  At Counsel's office in Houston.

22          THE COURT:  All right.  Good.

23          MR. SIMMONS:  Now, because of these motions,

24  we haven't necessarily had a chance to prepare

25  him, adequately prepare him for his deposition.

1  I think that we -- we could do it tomorrow, but I think

2  pushing it back a little bit later than the notice time

3  would be ideal.

4          THE COURT:  What's your position on that,

5  Mr. Humphrey.

6          MR. HUMPHREY:  Well, my plan was to go to the

7  State Bar meeting tomorrow, but if that's necessary -- I

8  know.

9          THE COURT:  That shows some bad judgment.

10         MR. HUMPHREY:  It is bad judgment, Your Honor,

11 but I've made a commitment to do it.  But if -- if

12 that's necessary, I can certainly agree to do it.

13              The deposition's been noticed for three

14 weeks, Your Honor.  I don't know why they need more

15 time, but if that's the case --

16         THE COURT:  What time is it noticed for?

17         MR. SIMMONS:  I believe it's noticed for 9:30.

18         MR. HUMPHREY:  10:00 o'clock.  10:00 o'clock,

19 Your Honor.

20         THE COURT:  10:00 o'clock.

21         MR. SIMMONS:  9:30 or 10:00.  So, if --

22 if we can push it to 1:00 o'clock, a two-hour deposition,

23 that's 3:00.

24         THE COURT:  What time's the State Bar meeting?

25         MR. HUMPHREY:  Well, there's a Tax Section

1  dinner my wife's involved in that night.  I may be able

2  to make it after 5:00 if I leave by 3:00.  It's not that

3  critical, Your Honor.

4          THE COURT:  Oh, it's in – where it it?

5          MR. HUMPHREY:  Dallas.

6          THE COURT:  Dallas?

7          MR. HUMPHREY:  Yeah.  I -- I'm fine pushing

8  it back to 1:00 o'clock, Your Honor.

9          THE COURT:  All right.  1:00 o'clock it is.

10          MR. HUMPHREY:  Okay.

11          THE COURT:  All right.

12          MR. HUMPHREY:  They said to get involved.

13          THE COURT:  Yeah.

14          THE COURT:  Just think about who said it.

15              I know you've got other motions.  I'm

16  just too busy right now to get to writing out even my

17  minute entry from that last time.  You know, I promise I

18  will do it.  It's just criminal has -- they are pounding

19  me.  So.

20          MR. HUMPHREY:  Uh-huh.

21          THE COURT:  And just it's hard to keep up with

22  the paperwork, even doing work on the weekends.  So, I

23  will get it, and I will look at your motion.  I know

24  you've got something pending.

25              What else is going on in this case?

1          MR. SIMMONS:  We -- we have several orders
2   based on the hearing.
3          THE COURT:  I've seen those.  I want to -- I
4   want to look at it.
5          MR. SIMMONS:  Right.
6          THE COURT:  I don't normally sign --
7   I appreciate proposed orders, but --
8          MR. SIMMONS:  Well, it's --
9          THE COURT:  -- I usually write my own.
10         MR. HUMPHREY:  I --
11         MR. SIMMONS:  Right.  And some of them needed
12  calculations and an affidavit --
13         THE COURT:  Right.
14         MR. SIMMONS:  -- from me on damages and things
15  like that.
16             We also have two motions for sanctions
17  that we discussed briefly in the June 12th hearing,
18  which were evasion of service and conduct or --
19         THE COURT:  Right.
20         MR. SIMMONS:  -- misconduct during the
21  deposition.
22         MR. HUMPHREY:  I will --
23         MR. SIMMONS:  That's --
24         MR. HUMPHREY:  Oh, sorry.
25         MR. SIMMONS:  That -- that's --

1          MR. HUMPHREY:  I didn't mean to --

2          MR. SIMMONS:  -- really the -- the scope of

3  our --

4          MR. HUMPHREY:  I will say the proposed orders

5  on their motion to compel and my motion for protection I

6  don't believe correspond to the Court's orders and what

7  was discussed --

8          THE COURT:  Okay.

9          MR. HUMPHREY:  -- at the --

10          THE COURT:  I'll look.

11          MR. HUMPHREY:  -- meeting -- are they in here,

12  Your Honor.

13          THE COURT:  All right.  Good enough.  Well,

14  I'm glad you're moving along with this case.  If not,

15  have a good day.

16          MR. SIMMONS:  Thank you, Your Honor.

17          MR. HUMPHREY:  Thank you, Your Honor.

18      (Proceedings concluded at 4:18:42 p.m.)

19

20

21

22

23

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION


    I, Linda Griffin, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


/s/ Linda Griffin                    July 5, 2017
Linda Griffin                            Date
Digital Scroll Transcription