1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF TEXAS

3                    HOUSTON DIVISION

4   ALLIANTGROUP, LP                          4:16-cv-03114

5
    VS.                                        January 11, 2018
6                                              Houston, Texas
                                               2:08 p.m.
7   MOLS

8

9                    SEARCH TERMS HEARING

10         BEFORE THE HONORABLE NANCY K. JOHNSON

11             UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For Plaintiff              Matthew L. Simmons
                               Littler Mendelson, PC
14                             1301 McKinney Street
                               Suite 1900
15                             Houston, Texas 77010

16                             Matthew Marzullo
                               Alliantgroup, LP
17                             3009 Post Oak Boulevard
                               Suite 2000
18                             Houston, Texas 77056

19  For Defendants             Brian S. Humphrey, II
                               Abraham, Watkins, Nichols,
20                                Sorrels, Agosto & Aziz
                               800 Congress Street
21                             Houston, Texas 77002

22  For Third Party Witnesses  Rob Hennig
                               Hennig Ruiz, PC
23                             1925 Century Park East
                               Suite 1960
24                             Los Angeles, California 90067
                               (Telephonically)
25

Proceedings from official electronic sound recording;
 transcript produced by court approved transcriber.

DIGITAL SCROLL TRANSCRIPTION                      281.382.9862

1  Court Clerk

2  Electronic Recording            Desiree Calderon
      Operator                     U. S. District Clerk's Office
3                                  515 Rusk
                                   Houston, Texas 77002
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  All right.  Good afternoon.

2              Please be seated.

3              Now, tell me what the dispute is.

4          MR. SIMMONS:  Well, I guess, first off, Your Honor,

5   we actually have Rob Hennig on the line.

6          THE COURT:  Okay.

7          MR. SIMMONS:  So, Mr. Hennig made a good point

8   recently, and during the hearing on the 18th, you did give us

9   a deadline of the next business day to give him terms.  Due to

10  an oversight on our part, we did not do that until

11  January 5th.  And on January 5th, we sent Mr. Hennig the terms,

12  the CPA names and all the clients, which – and the CPA and

13  client list is about 68, which is consistent with what we were

14  saying during the hearing.  And we said, Mr. Hennig, the Court

15  gave you 20 days; we'll give you 20 days.  We're willing to

16  give him 30; we're willing to work with him, but at this point

17  he wants a different order from you as far as a production

18  deadline.

19         THE COURT:  Okay.

20         MR. SIMMONS:  So, he's on the line.

21         THE COURT:  All right.  Mr. Hennig, have you been

22  able to hear all of that?

23         MR. HENNIG:  Yes, I have, Your Honor.  Thank you so

24  much, and I appreciate the Court considering this matter.

25  There's just two points.  The first, Your Honor, is, well, if

1  I get it.  They delayed it.  The only thing as a practical

2  matter I'm going to be in trial starting the 22nd of January.

3  So, it just – it may take me longer to get this prepared and

4  finished because I essentially have a week.

5          On the second point, Your Honor, is that we

6  originally agreed to 20 search terms.  And then, they had

7  represented, well, what about the client names – and I believe

8  they represented there were 30.  I have a list of 62 clients

9  and 24 CPA names.  So, we've gone from a search term of twenty

10 to over a hundred now.

11         So, I'm going to just ask if we can limit this

12 and I think I would ask the Court if they could limit CP- -- I

13 think that CPA should be limited or should be zeroed out

14 entirely, because they are not clients.  The issue with the

15 CPA is my understanding.

16         And then, secondly, with regard to the clients –

17 I mean, can we limit this to the thirty they said they would

18 have had?

19      MR. SIMMONS:  And Your Honor, that's not accurate.

20 The transcript actually says that – actually, you said is it's

21 somewhere between 50 and 60, and we said, yeah, that's about

22 what we think, and that's at page 17, lines 8 and 9.  And my

23 count of it is 68.  I don't know where he's getting the 90.

24 But these are all the CPA firm – firms and clients, and we do

25 believe the CPA firms are our clients, that we have several

1 contracts directly with CPA firms, and that's how we get to

2 the end-user client.

3 So, we would absolutely agree that CPAS firms

4 are completely responsive, because that's where all the money

5 is on all of these agreements. You can't get to the end-user

6 client without the CPA firm.

7 THE COURT: Don't they overlap?

8 MR. SIMMONS: They do overlap some, and actually most

9 overlap, but many CPA firms will – they'll have 30 clients, so

10 as long as we have that CPA firm direct us to that client then

11 that CPA firm is not necessarily included within the direct

12 end-user client e-mail communications.

13 So, there's some that overlap, and then, there's

14 some that go straight to the direct end-user client

15 communications. And all these clients, CPS firms, are

16 directly from the documents that have already been produced by

17 Mr. Hennig's clients. So, they're not random names that we're

18 throwing out, but these are the names that we have gotten

19 directly from the documents. We went through the thousands of

20 pages of production to make sure that we located every client,

21 CPA firm that we believe that we had a knowledge of and that

22 they had knowledge of through their work in Alliantgroup and

23 then utilized that knowledge to then go and get this. Almost

24 a million dollars worth of business in a year, out of mothing

25 from – despite them saying that they didn't – these are trade

1 secrets or forms or anything, million-dollar business all

2 within a year and these type relationships, these CPA

3 relationships especially take a lot of time, a lot of money to

4 just to locate and then to develop the relationship with. So,

5 those are really vital to – to our search process, and I

6 believe that, you know, we need those documents to be able to

7 prove up that they were soliciting our clients and our CPAs.

8 THE COURT: Mr. Hennig, I need –

9 MR. HENNIG: Your Honor, I was planning – yeah, I

10 apologize – I'm planning 20 search terms to pull out. I'm

11 planning a client list of 62 names. And then, I'm planning

12 CPAs, which are a separate list that has 24. So, I'm counting

13 a total of a hundred and six ones that I originally are – my

14 understanding was we were going to be limiting this to 20

15 terms. So, we have then toppled the amount.

16 It's just burdensome, Your Honor. I mean, it's

17 a hundred terms that I now have to go through. I mean, we are

18 certainly willing to cooperate, Your Honor. I represented

19 that. We will do – we will cooperate, but a hundred terms,

20 Your Honor, is I think unduly burdensome to a third party

21 witness who has no stake in this litigation, zero stake.

22 MR. SIMMONS: And this is what we agreed to. This is

23 what was expected – the 20 search terms and then on page 17,

24 line 8 through 9, 50 to 60 additional CPA client names. So,

25 60 plus 20 is 80. Let's say we were at – let's take Mr.

1  Hennig's number and say, we're at 96 now. That's within the

2  range of what we were anticipating at the time of the hearing

3  on the 18th. So, I don't think that if he didn't complain

4  about burdensome then about 80, that he would be able to do so

5  now with, you know, ten or so more.

6        THE COURT: All right. Well, you're way over what I

7  thought you were going to be looking for, because you're at –

8  between clients and CPAs, which my math is 86 – 62 clients and

9  24 CPAs; that's 86. And we thought we were going to be in the

10 50 to 60 range.

11        Mr. Humphrey, do you want to weigh in here? Do

12 you have a dog in this fight?

13        MR. HENNIG: Not particularly.

14        THE COURT: No dog?

15        MR. HENNIG: Just my disagreement on the merits of

16 what they consider a trade secret and whether a CPA is a

17 client, but that's neither here nor there with this argument.

18        THE COURT: All right.

19        So – and it's Mr. Simpson?

20        MR. SIMMONS: Simmons.

21        THE COURT: Simmons.

22        MR. SIMMONS: Yes, Your Honor.

23        And I apologize not being here the last two

24 hearings. I had a baby come, and then I had a – a –

25        THE COURT: You look great for just having a baby.

1          MR. SIMMONS:  Oh, my goodness.

2              Someone should have told me.

3          THE COURT:  Ble-w-w-w-w.

4          MR. SIMMONS:  I think they did; it just went in one

5    ear and out the other ear.

6          THE COURT:  All right.  So, Mr. Simmons, I am going

7    to make you limit that – with the 20 search terms and you've

8    got 86 on clients and CPAs, you're going to need to knock some

9    of those clients down.  So, the total would be – I'll give you

10   66; you need to subtract 20; I don't care how you're doing

11   that.

12         MR. SIMMONS:  Yes. Your Honor.

13         THE COURT:  All right.  What else do we need to talk

14   about?

15         MR. SIMMONS:  The production –

16         MR. HENNIG:  Your Honor –

17         MR. SIMMONS:  -- deadline.

18         MR. HENNIG:  Your Honor?

19         THE COURT:  The production deadline?

20         MR. HENNIG:  Just to be clear, Your Honor.

21         THE COURT:  Yes.

22         MR. HENNIG:  Your Honor –

23         THE COURT:  Yes.

24         MR. HENNIG:  -- I know – I just want to be clear.

25   So, you're going to allow 20 search terms and then 66 –

1          THE COURT:  Clients.

2          MR. HENNIG:  -- CPA and –

3          THE COURT:  Clients.

4          MR. HENNIG:  CPA clients?

5          THE COURT:  Yes, sir.

6          MR. HENNIG:  So, we're going to have a total of 86

7    search terms we're to look for.

8          THE COURT:  Eighty-six, yes, sir.

9          MR. HENNIG:  That – we're going to bear the cost of?

10          Your Honor, I just – I just – I mean, if that's

11   your order, that's your order.  I would ask for you to cut

12   another 20.  I just – I think this is bur- -- this is

13   burdensome on my clients, Your Honor.

14          THE COURT:  SO, I have –

15          MR. HENNIG:  They're for- --

16          THE COURT:  Mr. Hennig, I'd entertain that motion if

17   I knew what the difference in cost was, but right now it's

18   just – to me it's theoretical.

19          MR. HENNIG:  Understood, Your Honor.  Okay.  And to

20   the extent that I need to get a cost estimator or a means to

21   confer further on this, I will do so, Your Honor.  I will

22   certainly do so.  But it's just –

23          THE COURT:  I hear your frustration.

24          MR. HENNIG:  It was an off- --

25          THE COURT:  I hear your frustration, Mr. Hennig.

1         MR. HENNIG: It was an off-handed thing where we –

2 off-handedly based on, what, some 20 search terms – my

3 understanding – and then, if that's what the Court represented

4 there were approximately 30 client CPAs, so that there – and –

5 anyway, Your Honor, I will be the first to expect that my

6 clients have issues with the money with Mr. Simmons and if it

7 be necessary we will come back to the Court on this issue.

8 Okay?

9         THE COURT: That's great.

10         MR. HENNIG: But right now, I understand the Court's

11 order, and we'll comply.

12         THE COURT: All right. So, we need a production

13 deadline. And Mr. Hennig is in trial.

14         So, Mr. Hennig, do you think you can produce

15 this in four weeks – February 7?

16         MR. HENNIG: Candidly, Your Honor, not. I – I'm –

17 the trial is expected to last three to four weeks.

18         THE COURT: Really?

19         MR. HENNIG: But we're starting up – well, I – I have

20 long trials, Your Honor.

21         THE COURT: That is a long trial.

22         MR. HENNIG: And they – they're state – they're state

23 courts, so they don't have the – the limitations that – that –

24 that will get us famous for putting on these cases?

25         MR. SIMMONS: And just so, Your Honor, that Mr.

1  Hennig does have Ms. Deborah Laison (phonetic), helping him.

2  That's who I have been coordinating with as far as discovery

3  over the past – I would say five or six months.  I don't know

4  if she's at trial also.

5          THE COURT:  All right.

6              Is she in trial with you, Mr. Hennig?

7          MR. HENNIG:  No, no.  No, she isn't, Your Honor.

8  She – she is not.

9              Can I – can I ask, Your Honor – I mean, I would

10  like to review these things personally.  I could try to do so

11  – instead of February, I think you said the 4th?

12          THE COURT:  I said it was –

13          MR. HENNIG:  Can you extend it two weeks – I'm sorry?

14          THE COURT:  I said, I think the 7th – February 7th.

15  That's four weeks.

16          MR. HENNIG:  Okay.  Can we extend that?  Can we

17  extend that to the 21st, and then I'll be able – I – I

18  should – I will make myself available, in terms of getting it

19  done.

20          THE COURT:  All right.  So, if I extend your

21  production to the 21st, then what other dates do I need to

22  extend?

23          MR. HENNIG:  Well, it's depending upon, Your Honor,

24  them coming with the revised list by – let's say – close of

25  business tomorrow.

1          THE COURT:  Can you do that, Mr. Simmons?

2          MR. SIMMONS:  That is not a problem, Your Honor.  I

3    will absolutely get that done for you.

4          THE COURT:  Okay.  Well, that sounds good.

5              Then – so, is this the last production, or are

6    there other document requests out?

7          MR. SIMMONS:  There are other document requests out

8    to the – our friends at Parakore CH.  They have produced some

9    documents; they did not produce any attachments to their

10   e-mail, so I'm working with them on that, as well as trying to

11   schedule their one-hour deposition needs this month, and I've

12   yet to hear back from them on that.  But they've been fairly

13   responsive in the past, albeit with issues.

14         THE COURT:  okay.  So – and then, once you get this

15   document production by February 21st, what, do you need to

16   take more depositions?

17         MR. SIMMONS:  I wouldn't think so.  We obviously have

18   to see what the documents say.  If there's some unknown third

19   party that – that hasn't been disclosed to us at this time or

20   that someone has testified, I have nothing to do with it, and

21   they do have something to do with it, we would certainly want

22   to reserve the right to take their deposition.

23         THE COURT:  All right.  Then – let me then, if that

24   document production is due the 21st, then let's say discovery

25   ends March 16, and dispositive motions due by April 6 –

1  dispositive and non dispositive.

2  MR. SIMMONS:  And we do have one, as you saw with our

3  agreed extension – do you want to extend the response deadline

4  past the discovery deadline to, let's say, that, and that way,

5  I guess we wouldn't have the argument that we clearly have now

6  that the no evidence summary judgment motion is not ripe for

7  consideration, because obviously, we have discovery issues?

8  THE COURT:  You've lost me.

9  MR. SIMMONS:  Sorry.

10  There – there – Mr. Humphrey's filed a summary

11  judgment motion on December 15th.

12  THE COURT:  Okay.

13  MR. SIMMONS:  No evidence and I believe Your Honor

14  commented during the hearing, which was after he filed the

15  motion, so you didn't have the benefit of what you had to say

16  about it at the time, that a lot of his no evidence arguments

17  were highly suspect due to discovery issues in the case.

18  So, I don't know if you want to go ahead and postpone the

19  response date until after all the discovery has been

20  conducted, so that –

21  THE COURT:  Let's do that.  Let's do that.

22  So, your response to Mr. Humphrey's motion, no

23  evidence motion for summary judgment due March 30, and then

24  all motions – dispositive and non dispositive – must be filed

25  by April 6.

1          MR. SIMMONS:  Okay.

2          THE COURT:  Okay?

3          MR. HUMPHREY:  There are arguments other than no

4  evidence that I guess the Court is going to allow the response

5  on the entire motion for March 30th?  I just wanted to clarify

6  that.

7          THE COURT:  Yeah, yeah, yeah.

8          MR. HUMPREY:  Your Honor may want to consider it.

9             Okay.

10         YHE COURT:  I mean, I'm not honestly – honestly, it's

11 in line –

12         MR. HUMPHREY:  Right.

13         THE COURT:  -- but it won't come to the top before

14 that.

15         MR. HUMPHREY:  Understood, Your Honor.

16         THE COURT:  Sorry to say.

17         MR. HUMPHREY:  But –

18         THE COURT:  So, just make sure that all of your

19 arguments are in, and you're not going to tell me, well, I

20 was – I wanted to stage it for, first, no evidence, and then

21 if that – if you lost that, then well, here's my real summary

22 judgment.

23         MR. HUMPHREY:  Right.  Of course, Your Honor.

24         THE COURT:  Everything needs to be in – I'll consider

25 everything if the –

1         MR. HUMPHREY: If I need to amend my Motion for

2 Summary Judgment, I assume I'm not doing that on the April

3 6th –

4         THE COURT: You do that by April 6th.

5         MR. HUMPHREY: -- deadline.

6         April 6th? Okay. Will do.

7         MR. SIMMONS: Our response date is March 30th.

8         THE COURT: That's to his –

9         MR. SIMMONS: Right.

10         THE COURT: -- no evidence.

11         MR. SIMMONS: Okay.

12         THE COURT: Well –

13         MR. HUMPHREY: And I have one over-arching motion

14 that has no evidence arguments and no other arguments.

15         THE COURT: Well, do you think it's going to change?

16         MR. HUMPHREY: I don't think so. It's going to

17 depend on the – on – if the discovery is still open, that's a

18 possibility. I don't currently make discovery on that.

19         THE COURT: Discovery is open until March 16th.

20         Why don't we do this? Let's keep the

21 deadlines –

22         Mr. Humphrey, if you feel the need to file some

23 new summary judgment argument, let Mr. Simmons know and then,

24 you know, file a motion; I'll let you off --

25     (Pause in the proceedings.)

1    THE COURT:  Well, I'll let you off that date,

2  because, I mean, we don't need to be doing work that we don't

3  need to do.

4        MR. HUMPHREY:  Understood.

5        MR. SIMMONS:  We fully understand, Your Honor.  I

6  appreciate that.

7        THE COURT:  But, you know, just let each other know

8  what you are up to.

9        MR. SIMMONS:  Yeah, right now, per a response

10  deadline of March 30th, which is after the discovery deadline

11  that absolutely works for us.  If you need to supplement

12  something in your motion based on the discovery, let me know;

13  we'll work with the Court and get an extension so that there

14  is no duplicity.

15        MR. HUMPHREY:  Of course.

16        THE COURT:  Yeah, and you can file a reply.  I don't

17  really worry about that.  Just get it in.  That's the

18  important thing is getting it on file.

19            And did I see that you were talking settlement,

20  or do I have this case confused with something else?

21        MR. SIMMONS:  We were.  Do you want to handle that?

22        THE COURT:  I'm –

23        MR. HUMPHREY:  We were.  I think there's one – I

24  think we're close on some issues.  I think there's one massive

25  statement point at this point that I think we're – we're kind

1   of – I didn't pass a month ago; I think we took off on another

2   matter, but that's basically the agreement to a public

3   judgment that my client refused to agree to and they insisted

4   upon it. So, I don't really –

5         THE COURT: A public judgment?

6         MR. SIMMONS: Just – just –

7         THE COURT: Settlements are never public,

8   Mr. Simmons.

9         MR. SIMMONS: Well, his client didn't agree to it for

10   the last three months; this – this – there is a crux of the

11   issue here that it was just – that it was just going to be –

12   on it – it was going to be just the amount that the case is

13   settled. And that's that. But that was – yeah, that was –

14         MR. HUMPHREY: I think they got a little greedy as to

15   what was going to be in that and came to his senses and

16   decided he didn't want to agree to a public judgment where he

17   was going to appear to reach it one way.

18         MR. SIMMONS: That's why it was incorrect –

19         MR. HUMPHREY: Right.

20         MR. SIMMONS: -- in our motion yesterday, because as

21   of yesterday, that was our understanding.

22         MR. HUMPHREY: Correct.

23         MR. SIMMONS: And actually it had changed last night.

24         THE COURT: All right. Well, that's what you – if

25   that's what you want, but that's not a – you know, that's not

1    a settlement if you have to agree to stuff on the record and

2    everything gets filed on the record.  That's just highly –

3              MR. SIMMONS:  Right.  It would be a –

4              THE COURT:  -- unusual.

5              MR. SIMMONS:  It would be a three-sentence deal, and

6    that's –

7              THE COURT:  It doesn't matter if it's one word.

8              MR. SIMMONS:  I understand.

9              THE COURT:  But, you know, it's on the pubic record,

10   and that's just not a settlement.  So, you know, what will be

11   on the public record is my summary judgment order, so, whether

12   you like it or not.

13             MR. SIMMONS:  I understand.

14             MR. HUMPHREY:  True, Your Honor.

15             THE COURT:  You know – so – and I guess the Bench

16   trial I would have to write out of that.  And, so, those can

17   be owies when the Court – because it's a Bench trial I've got

18   to make credibility findings.

19             MR. SIMMONS:  Absolutely.

20             MR. HUMPHREY:  That's true, Your Honor.

21             THE COURT:  And that can be an owie depending on how

22   that falls, because I've to do it.

23             MR. SIMMONS:  You're absolutely true, Your Honor.

24             THE COURT:  Well, you won't agree; I've seen some

25   people they really, really want the decision until they see it

1  come out and then they're like, can I please retract that?

2  I'm like, no.

3          So, anyway – but that's – that's why settlements

4  are secret, and Court rulings are not, so it depends on – be

5  careful what you ask for.

6          MR. SIMMONS:  Understood, Your Honor.

7          The only things we have left – we submitted our

8  terms to Mr. Humphrey.  He's responded and objected to two

9  thirds of our terms for being either overbroad or irrelevant.

10 And so, we talked outside, and we came to a few agreements –

11 we came to an agreement on one of the terms.  And we came to

12 an agreement that Mr. Humphrey's e-mail's address would be all

13 the documents that have his e-mail address would be

14 automatically pulled out for just him to review.  And

15 obviously, it was a client forwarded on an e-mail, so it's up

16 to him to consent to us, but that way we don't see any

17 attorney-client communications.

18          And so, those are our agreements, and then we

19 agreed on about ten other words.

20          MR. HUMPHREY:  Well, we – actually, there's a list of

21 35 terms and a bunch of client CPA names.  I agree to all the

22 client CPA names, every single one of those.

23          MR. SIMMONS:  That's correct.

24          MR. HUMPHREY:  The other – 35 other terms all I have

25 objected to – I've agreed upon those terms to pretty much all

1    of the proper names, except there are a few I don't think are

2    relevant; the rest of them I objected to would just be very

3    common words that are going to be overly inclusive, and I'm

4    not sure why we need to search, for example, to number one was

5    the word "money."  I don't know why we need every e-mail that

6    is going to have the word "money" in it, if we're already

7    going to have every e-mail that has Angela T, Lewicki and all

8    the client names and all the CPA names.  So, I'm not sure what

9    else could possibly be out there other than dealing with all

10   the documents.

11             So, that's basically my general objection to

12   most of these, is that they're just generic words that are

13   maybe overly inclusive and not reasonably calculated to see

14   through all the documents, when they're already getting all

15   the documents with all the relevant proper names in this case.

16             MR. SIMMONS:  We –

17             THE COURT:  So –

18             MR. SIMMONS:  We certainly do not want an overbroad

19   production.  We don't want to look through it either, Your

20   Honor.

21             THE COURT:  Right.  So, why are you asking for money?

22             MR. SIMMONS:  Well, the term "money" – so, first of

23   all, the CPA names and the client names are just the ones that

24   we know of at this time.  We firmly believe that there are a

25   bunch more, so if we are just limited to just those, then that

1  will completely answer it if – our search if we were not able

2  to find additional names, if they're out there.  As far as

3  money goes, it goes directly to our damages.  We need to know

4  who asked for money, who requested money.  We don't know if

5  Brad Mols was talking directly to the CPA or someone else or –

6  we don't know how he structured it.  He's already set up two

7  strawmen in this case, being his wife and Ms. Torres.  So, we

8  don't know what other strawmen or obstacles he put in place to

9  avoid the discovery of how much money he was doing, how much

10  money he was making and the extent of his control over the

11  entire enterprise and really the foundation of the enterprise

12  So, we do think that there will be documents, responses that

13  would be responsive to money and not to the other terms.

14         Some of the other terms in here – "gift,"

15  "loan" – those are two huge terms that he says are overbroad.

16  The difference between what he says he gave a ten-thousand

17  dollar gift to Ms. Torres the day after both of them resigned

18  on the same day that was a gift and not seed money for the

19  Prime Parakore enterprise.  That's a big issue in this case as

20  well.  Mr. Humphrey doesn't believe – he believes that's an

21  irrelevant issue.  I certainly disagree, because it clearly

22  shows his control, intent and – and purpose behind the entire

23  enterprise to compete through a strawman.

24         MR. HUMPHREY:  As I say, Your Honor, they're already

25  getting Angela and Torres and Brian and Parakore, so it's hard

1  to imagine an e-mail talking about gifts to these people or

2  entities that would not include – that are – not already be in

3  the search terms.

4          THE COURT:  I'm going to let him do it.  I think that

5  it's very broad, but, you know, he's going to have to look

6  through it.

7              Be careful what you ask for, Mr. Simmons.

8          MR. SIMMONS:  I – I – I understand, Your Honor, and I

9  don't think it'll populate too many additional, if any.

10         THE COURT:  Okay.

11         MR. SIMMONS:  So, that's money, gift, loan.

12             The next one is suit.

13             We chose suit; Mr. Humphrey has objected to it

14  as overbroad.  Any communications that he had with his

15  attorney are already taken out.  Any communications during

16  this timeframe with anybody else about this lawsuit is

17  obviously responsive.  He's talking to third parties about

18  this lawsuit – his claims, his defenses, amounts he's making,

19  who knows what else.  So, I think the term "suit" is

20  specific –

21         THE COURT:  Are you also asking for lawsuit, the word

22  "lawsuit" or just "suit"?

23         MR. SIMMONS:  We were just asking for suit, in that

24  any word that would encompass suit –

25         THE COURT:  That would come up?

1        MR. SIMMONS:  -- would – lawsuit would come out.

2        THE COURT:  All right.  I'll allow that.  What else?

3        MR. SIMMONS:  We'd agree to the Dan (phonetic), the

4   limitation on that, and we also – I just want to get on the

5   record – we agree to the limitation on AG, the juke bug

6   (phonetic).

7            So, the next one is Converse.  So, Converse is

8   Mr. – Mr. Mols' new entity that he started after he left

9   Prime. He – he believes that it's irrelevant, is the

10  objection.

11           What we're concerned about, what we think is in

12  these documents is that he took documents from Aliantgroup to

13  Prime and then he's now using those same Prime documents that

14  he got from Aliantgroup and his new venture Converse.  That's

15  the only chain of custody that's possible.

16           We told Mr. Humphrey it would be absolutely

17  agreeable to have this term specifically as attorneys eyes

18  only at first because Mr. Humphrey has expressed a concern

19  that we could – if this was shown to everybody, then we could

20  potentially know what clients he's going after and then use it

21  for an improper advantage, I said, fine; we can do that to an

22  AO and he is still is not agreeable.

23        THE COURT:  Mr. Humphrey, what's the problem?

24  `        Do we have any – is Mr. Hennig still on the

25  line, and does ne – do you need to be here, Mr. Hennig?  If

1   you want to drop off, I don't have a problem.

2          MR. HENNIG:  Thank you, Your Honor.  I will – I

3   will – I accept your invitation very graciously.

4              Thank you so much.

5          THE COURT:  All right.  Have a good day.

6          MR. HENNIG:  All right.  Bye-bye.

7          MR. HUMPHREY:  Your Honor, on the relevance, it is

8   simply the fact that – it is simply the fact that the Converse

9   or the entity that was formed sometime after August of 2017,

10  the restricted period in the – one agreement ended in May of

11  2017.  So, we're already well after the restricted period

12  here; this is all new, a new business, and –

13         THE COURT:  Unless he's using the Alliant documents.

14         MR. HUMPHREY:  Correct.  And I'm just not sure how

15  this is reasonably calculated to – we've covered that.

16         THE COURT:  Well –

17         MR. HUMPHREY:  That's exclusive of the other search

18  terms he's asking for.

19         THE COURT:  -- I think it's going to be a stretch,

20  but I'm going to allow it, attorneys eyes only.

21             What else, Mr. Simmons?

22         MR. SIMMONS:  All right.  The word "pay" does in with

23  gift, loan and money?

24         THE COURT:  I think so.

25         MR. HUMPHREY:  I would say the same thing, Judge.

1       MR. SIMMONS: "Check" does that go in with the same

2  terms?

3       THE COURT: I would think so.

4       MR. HUMPHREY: If I could say that this is going to

5  be terms in staying with the rest of my objection is down to

6  word "Houston Press, "if you want to go to that.

7       MR. SIMMONS: So, you're fine all the way down to the

8  Houston Press to withdraw those objections?

9       MR. HUMPHREY: Just to honor the Court's rulings on

10 that.

11      MR. SIMMONS: Okay.

12      MR. HUMPHREY: They're the same issues.

13      MR. SIMMONS: Okay.

14      So, I have all the way down to Number 21, as –

15 as I guess being ordered by the Court, according to your

16 understanding. Okay.

17      The next one is Houston Press. So, with Houston

18 Press and Media, so these are two words that we believe and we

19 kind of know that he's been talking, again, to third parties

20 about this lawsuit. Anything that he says to third parties

21 about this lawsuit is responsive to our request, whether it's

22 about claims, defenses, amounts owed, anything that he's

23 providing third parties about this lawsuit, which we believe

24 he did provide to the Houston Press or other media outlets;

25 that's responsive and we'd like to know what his thoughts were

1  to a third party about this lawsuit.

2  MR. HUMPHREY:  Your Honor, they hadn't sued for

3  anything that he's talking to media about; it has nothing to

4  do with any of the issues in this case, Your Honor.

5  THE COURT:  I'll allow it.

6  What's else?

7  MR. HUMPHREY:  The aforementioned answer, the same as

8  before.

9  MR. SIMMONS:  So, you're fine with those two?

10  MR. HUMPHREY:  Right.

11  THE COURT:  I'm – I'm – that will be – I'm ordering

12  that; go ahead.

13  MR. HUMPHREY:  Okay.

14  MR. SIMMONS:  Okay.  The next one, we agreed on

15  Montana; the next two are Messrs. Tom Johnson and Kent

16  Christiansen.  So, these are two individuals – actually Kent

17  Christiansen actually has a Prime e-mail address.  So, I don't

18  know why there's an objection to him, whenever he didn't

19  object to Daniel Lanier or Angeles Torres.

20  And these are two individuals that we believe

21  are absolutely involved in this case, even though Mr. Mols

22  disclaimed any culpability or knowledge of these two people.

23  You know, one of the guys had a Prime e-mail address.  So,

24  clearly, that's not the case, and so, Mr. Humphrey has

25  objected to those two terms as –

1           THE COURT:  All right.

2           MR. SIMMONS:  Or those two individuals as irrelevant.

3           THE COURT:  So, if Christiansen has a Prime e-mail

4  account, he may have some information.  Tell me about Johnson.

5           MR. SIMMONS:  So, Tom Johnson is the individual who

6  Mr. Mols claims told him about Lewicki and had Mols hire

7  Lewicki.  We don't believe that's the case.  Well, we believe

8  that Tom Johnson, Lewicki and Mols are all combined in

9  assisting Mols in this new venture.  Tom Johnson is

10  apparently – he's a CPA.  He's one of the owners of the CPA

11  firm, and he also does these R&D tax studies on the side, and

12  he's the individual who also, I believe, has hired Mr. Lewicki

13  in the past as an independent contractor, and so, we believe

14  that everything is interrelated as far as Tom Johnson and the

15  anti-competitive efforts of Mr. Mols and Mr. Wood.

16          MR. HUMPHREY:  Well, we're going well beyond the

17  pleadings in this case.  I've never heard an allegation that

18  he's involved with Tom Johnson in any competition with

19  Alliantgroup.  So, I mean, that's pretty much news to me.  I

20  know he has spoken with Tom Johnson before.  I know Tom

21  Johnson competes with Alliantgroup, but we have gone well

22  beyond the claims in this case.

23               First, Kent Christiansen I would agree, and if

24  he's got a Prime Tax e-mail he's relevant.  That's the first

25  I've heard of that.  I mean, I may not have seen the

1 documents –

2       THE COURT: I'm going to allow Mr. Johnson. It just

3 sounds like, you know, if Mr. Johnson has evidence that he's

4 involved or how these people interrelate, then you can search

5 for his name.

6         What else?

7       MR. SIMMONS: So, we can search for both of them?

8       THE COURT: Both of them, yes.

9       MR. SIMMONS: Thank you, Your Honor.

10        Are you fine with the next two, Bryan?

11       MR. HUMPHREY: I think those are the same two, yes.

12       MR. SIMMONS: Okay. So, that resolves 34 and 35.

13        You also objected to the extent of the search

14 terms to be limited to May 2nd, 2017. You're going to

15 withdraw that as well?

16       MR. HUMPHREY: I'll just – I'll serve the objection.

17 I think the ruling is going to be is my objection is anything

18 after May 2nd, 2017, which again the restricted period is

19 irrelevant but – based on the Court's prior rulings.

20       MR. SIMMONS: There's more plaintiffs than just were

21 not solicited.

22       MR. HUMPHREY: Really.

23       THE COURT: Yeah, it can go beyond that. But let's

24 have a cutoff date.

25       MR. SIMMONS: Today's date.

1          THE COURT:  How about December 31st?

2          MR. SIMMONS:  Of?

3          THE COURT:  Of '17.

4          MR. SIMMONS:  Okay.

5          THE COURT:  What else?

6          MR. SIMMONS:  I believe that is all there is, Your

7    Honor.

8          THE COURT:  That is?

9          MR. HUMPHREY:  We're done, Your Honor.

10         THE COURT:  All right.

11              All right.  Then, there you are.

12         MR. SIMMONS:  Thank you for your time, Your Honor.

13         THE COURT:  All right.

14         MR. HUMPHREY:  Thank you, Your Honor.

15         THE COURT:  You all have a good day.

16      (Proceedings concluded at 2:43 p.m.)

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

 

    I, Linda Griffin, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


/s/ Linda Griffin                            February 2, 2018
Linda Griffin                                Date
Digital Scroll Transcription